061904 Alfred Morin v. Mark K. Leahy, et al. Thank you. Mr. Foley, good morning. Good morning, Your Honor. May it please the Court. My name is Stephen Foley. I represent Alfred Morin, the plaintiff appellant in this case. The Court below erred when it determined that Mr. Morin had an option available that would allow him to possess a firearm in the home for self-defense other than a license to carry. We're asking that decision be reversed and this case be sent back to the District Court with appropriate level of scrutiny to determine whether the disqualifying law can withstand that scrutiny. I'm sorry to interrupt you so early in your argument, but I have a question in my mind. Your client has been convicted of a disqualifying offense, or he would be, if he carried a weapon, he would be violating federal law. Are you aware of that? I don't believe he would be. The offense for which he was convicted was not a felony. It was a misdemeanor. He carried a maximum sentence of six months in jail. Under 922, that would not disqualify him from carrying a firearm. He would not be a felon in possession. The only place this conviction disqualifies him that I'm aware of is under the laws of Massachusetts. I think you're right. I'm mistaken. I thought he was convicted for a federal moratorium of one year. No, the charge was reduced to attempted possession of a firearm and possession of ammunition. Both of those carried a maximum sentence of six months. If he had been convicted of possession of a firearm, that would have been a one-year sentence. He was originally charged with that, but that was played down to attempted possession. Okay, sorry. All right. Very fact-intense case. It seems your case comes down to whether the FID permit allows one to possess a gun in the home, because you frame the issue as whether the Class A license is the least comprehensive available that would allow home possession. That's correct. Your client hasn't applied for an FID. He hasn't applied for an FID, but the FID would not permit him to possess a handgun. And what's your basis for saying that? Mass General Law, Chapter 140, Section 129B, Paragraph 6. A firearm identification card shall not entitle a holder thereof to possess a firearm. But the Supreme Judicial Court has interpreted these statutes as saying an FID does allow you to possess a gun in your home. We have to follow what the SJC says. Those courts have never made an actual decision on that. There's been dicta to that effect that says, and the case is cited, there's dicta that says had the defendant had an FID, he would have been permitted to possess a firearm in the home. But in none of those cases did the defendant actually have an FID. And you think we're sitting here as the federal court interpreting state law, we can appropriately ignore that dicta? It is dicta when it clearly opposes the plain language of the statute. All of the cases cited lead back to pre-1998 law when prior to 1998 it was permissible to possess a handgun in the home with an FID. If you can get the FID under state law, you have no problem then, right? There's two issues. The same prohibition prohibits him from getting an FID. Well, that's not a constitutional problem. I mean, it's not the same constitutional problem that you're raising. It's not the same constitutional problem. However, the FID does not permit him to possess a firearm, a handgun. No, but if it does, in other words, the oddity of your argument is we're asking questions that are of the effect, but you can get an FID. And you say, I can if we say, but it looks like the SJC says you can. You want an FID. It's not like you don't want one, do you? You'd be perfectly happy if you could get an FID, correct? If an FID permitted possession of a handgun, yes. Yes, so I understand that, but if the SJC were to say it does, you wouldn't oppose that? I would oppose it on the fact that mere possession doesn't allow you to buy it, to bring it home, to do anything with it. There's a different permit you can get for that, isn't there? If you have an FID card, you can get a permit to have the weapon delivered into your home. There is on the books a permit to purchase. The FOIA request that went into the state determined that none have been issued since 2006. That's as far back as they went. So the state does not issue permits to purchase, and it is specifically prohibited to sell a handgun to somebody without an FID or a permit to purchase. They don't give out a permit to purchase. It seems like we've got a real standing problem here. You've got – you want us to look at a constitutional challenge regarding possession of the gun in the home. The Massachusetts Supreme Judicial Court has said you can get one. You haven't applied to get one, and you now just argue that if you did apply, you'd have trouble getting – actually purchasing the gun because you'd also need to apply to a permit that you say would be denied. But you haven't applied for that permit. So why don't we just have a classic standing problem here? That would be similar to saying if you had a driver's license, you could get a – you could have a gun in the home. It doesn't permit it. Well, the difference is the Supreme Judicial Court has said yes, it does. And if the Supreme Judicial Court said if you get a driver's license, you can get a gun in the home, we might as well say, well, if you really want a gun in your home, you should apply for one of those. And then if you can't get it, come back and complain. The Supreme Judicial Court has never taken the matter head on. The Supreme Judicial Court, none of the cases cited that quote this dicta address Paragraph 6. Paragraph 6 was introduced in 1998, the same time disqualification was introduced. Here's, I guess, a way of putting it. If I understand your constitutional argument, you're not prejudiced in any way. If we were to hold that in our judgment, the SJC says you can get an FID permit, correct? And given what you've argued to us, if you lose on the ground that actually you can get an FID permit, according to the SJC, there's no constitutional harm that's caused you, correct? If he were actually able to get one and somehow – Well, that's not – we have nothing on the record that suggests you can or can't. Assume the only argument you've made to us is why you can't get an FID is the plain language of the statute. Correct. If you were to lose on the ground that notwithstanding your reading of the plain language, the SJC reads it otherwise, you would suffer no constitutional harm, correct? This particular instance, that is correct. Okay. And at that point, it would start all over again, apply for an FID and be denied for that. And, you know, constitutionally, this law prohibits issuance of a license to carry for anybody who's been convicted of a misdemeanor, a nonviolent misdemeanor. They're already disqualified if they've committed a felony under Massachusetts law. If they've committed any violent crime, this circuit has held that crimes of domestic violence certainly exclude someone from protection under the Second Amendment. But Massachusetts goes a step further and disqualifies anybody who's been convicted of any crime of violence, which includes simple – But you're not challenging that restriction. We're not challenging that. But Heller drew a bright line at felonies and insane. With respect to home protection. With respect to home protection. But this provision is a disqualification with respect to carrying in public. No, his – And you say his claim is the statute is broader than that though, right? Yes. And if the FID allows you to have it at home, then Mass. law doesn't make a misdemeanor a disabling thing necessarily with respect to home. The same prohibition applies to the FID, but again, we're not at that stage. Then you'd have to raise that. It's the identical language in the FID statute that's in the license to carry statute. But the plain language of the statute, I mean, you can't ignore paragraph six. A firearms identification card shall not entitle the holder to possess a gun except on a firing range. It's the only place you can do it. You can't do it in the home. All of the cases refer back to pre-1997 cases where it was permissible to possess a handgun in the home with an FID. That's no longer permissible. The plain language of the statute prohibits that, and there is not a case on point that addresses that issue. Every case on point is DICTA that says that if he had this FID, then maybe he would have been okay. However, DICTA is not law. This is going to be the first gun rights case in which the plaintiff is told by the highest court of the state that he can have a gun in his home, and he's saying, no, I can't. That's quite possible. However, it would be similar to in Heller where they said you have to register your handguns, but we don't register them. It's the same type of argument. They say you can have it with an FID, but we're not going to let you have an FID. Well, you could bring that challenge once we get to that issue if this came up as a challenge to the FID law. You're saying we don't have to look at that at all because we already know the FID on its plain language restricts it, and the second level argument is just a different one that you don't have standing to raise here because you're not challenging the FID law. At this stage, we're not challenging the FID law. Thank you. Thank you. Ms. Kovach? Good morning, Your Honors. May it please the Court, Assistant Attorney General Julia Kovach for the Commonwealth. Can I start you by asking you a question? Yes, Your Honor. Can the government state a position as to whether they would issue an FID license to a plaintiff here? The Commonwealth agrees with Dr. Moran that his conviction is a mandatory disqualifier. He would not be eligible for an FID card, which goes to the heart of my argument, which is that the Commonwealth has advanced two routes for affirmance in this case. The first and the more compelling is that this Court should uphold Section 131 D2D under the standard of review articulated in Booker. That is, it should hold that D2D is substantially related to the Commonwealth's important interests in preventing crime and promoting public safety. Under that approach, this Court doesn't need to address these state law questions that are raised by Dr. Moran in his brief, namely whether an FID card allows possession of a firearm in the home or not or what the status of a permit to purchase is. Under that approach, this Court made clear in Booker that the state legislature can regulate by category and disqualify categories of people from firearms possession and that that disqualification can be consistent with the Second Amendment. Like the law at issue in Booker, D2D doesn't impact the core of the Second Amendment, that is, the right of law-abiding, responsible citizens to possess a firearm in the home for self-defense. So even assuming that the Second Amendment is implicated by this case, D2D must be upheld if it is substantially related to important government interests. And here it is. The nature of the disqualification and empirical evidence demonstrate that D2D is closely tied to the government's interests in preventing crime. So first, the nature of the disqualification. What it does is it disqualifies people from firearms possession who have failed to abide by firearms safety laws. That itself, just as a matter of logic and common sense, shows a close fit. These facts are not great for that argument. Well, you know what, I think they are. The Commonwealth doesn't believe you should look at particular facts about... This man had a license to begin with. Yes. By mistake, he thinks that that license covers him outside Massachusetts. He goes to Washington, D.C., goes into a museum and sees a sign that says you can't have a weapon, goes to check in his weapon, and gets arrested for trying to comply with the law. Yes, but before he even got to Washington, D.C., he took his firearm, he drove his firearm through several different states that prohibited possession of a firearm without a license. So he violated several states' licensing laws in addition to Washington, D.C.'s. On the same misapprehension. On the same misapprehension. But on top of that, several years later, he falsely represented on his application form that he hadn't had a disqualifying conviction when, in fact, he had. And all of those facts, which, again, the Commonwealth police don't bear in the case, but they show that this... The second section is irrelevant, right? Excuse me? Is the lying an independent ground for disqualification? Under Hightower, it is. Oh, excuse me, it's not under state law. Hightower was a suitability case. But if this court is going to look at the particular facts bearing on Dr. Morin's case, the Commonwealth contends that, yes, Hightower says if you make a false representation on an application form, that itself is a sufficient excuse for disqualifying someone from firearms possession. That's not a Second Amendment problem. But I'd like to urge this court to just hone in on the particular as-applied challenge that's made here. Dr. Morin is challenging the statute as applied to people with nonviolent misdemeanors for firearms possession. He should not be able to present facts about whether he's a good person, whether he's been rehabilitated, because the Commonwealth is entitled to legislate by category. That's Booker. And this court has never suggested that you could bring an as-applied challenge based on whether you've been rehabilitated several years later or whether you're not sufficient. But you could bring an as-applied challenge based on the nature of the offense, don't you think? Yes, and that's what he's done here. And we don't dispute that he can do that. He can bring an as-applied challenge saying my particular conviction should exempt me from or is a constitutional problem. And the Commonwealth says, no, for all of these reasons, there's a close fit between the disqualification and the government's interests. But he should not be able to take the additional step of saying I give to charity, I have had a stable job, all of these particular fact-based issues, because that would open federal courts up to these highly fact-intensive inquiries and would, as this court said in Torres-Rosario, pose problems for fairness and notice and administrability. So the Sixth Circuit in the Tyler case recently rejected an attempt to have this type of individualized hearing on the facts of a particular person's case after the disqualifying conviction. Could you go back to your answer to Judge Torroya's question? Are you saying that we should regard the Massachusetts SJC as having erred when it said you can use an FID to have a gun in your home? No, Your Honor. So I understood Judge Torroya's question to say is Dr. Moran's conviction a mandatory disqualifier for an FID card? The answer to that is yes. But the SJC has held, I cited six cases on page 41 and 42 of my brief, five of them after 1998, in which the SJC says you can possess a firearm in the home with an FID card. So I think that issue is well settled. In footnote 14 of the Hightower case, this court looked at the language that Dr. Moran cites in 129b6 and said nevertheless the SJC has made clear that you can possess a firearm in the home with an FID card. How can he challenge the FID rules without applying for an FID permit? He can't. And that's what the district court based its case on. Under Hightower, he should not be able to challenge his ability to possess a firearm in the home because he didn't apply for an FID card, which would have allowed him to. That's one basis for affirmation. In which case we wouldn't reach anything that you've just been talking about. That's right, but the Commonwealth urges this court to You want a lawsuit too. Both parties would really like us to get to a lawsuit over whether you can have a gun in the home when no one's applied for the permit to have a gun in the home. No, the Commonwealth does not want that lawsuit, which is why the Commonwealth is urging this court to affirm on the basis that I've articulated to apply the standard of review. Well, what are you on the lawsuit? That's different. It's me. You don't want a lawsuit. No, no, it's not. We don't actually want the lawsuit. Well, the easiest way not to have it is to conclude he didn't apply for the thing that would trigger the analysis. If this court were to hold that, he would go reapply for an FID card. The Commonwealth doesn't dispute that he would get rejected. Then we'd be back, and he might bring the same case. We'd be back in the district court making the same arguments that we did last year. But that's the way standing works. You actually go and apply for the thing, and yes, you may get back to the same point someday, but we'll actually have a real case before us. Sure, and that would be a valid basis for affirmance. For example, he might then make a record about whether under that statute it's possible to get the, I forget what he called it, the registration form that you would need, that we would have a record about whether those had ever been granted in the last century. I mean, all that type of thing would then be before us. None of it's before us now because there's no application under that statute. That's true. But these are all state law issues that, again, this court doesn't need to reach if it adopts the Booker approach. Let me see if I understand your position. Your position is that the SJC has said that an FID allows him to have a gun in his home. Yes. He hasn't applied for an FID license, and if he applied for an FID license, he would be disqualified, according to you. Yes, that's right, Your Honor. Okay. Thank you. Good morning. May it please the Court. Good morning. Janelle Austin from KP Law, representing the Chief of Police of the Town of Northborough. The Chief submits that the District Court's decision was correct and should be affirmed. While the Commonwealth has intervened in this case to defend the constitutionality of the Massachusetts Firearms Licensing Statute, it's the Chief's position, as outlined in our brief, Your Honors, that the Chief should not be held liable under Section 1983 for simply enforcing a mandatory state law. The categories, as my sister correctly pointed out, have been enumerated by the Massachusetts legislature. And simply put, Your Honors, the Chief's hands are tied whether or not a license to carry can issue under these circumstances. We're not dealing with the suitability determination that's under 140, Section 131. This is a mandatory disqualifier. And so when the Chief has reviewed Mr. Moran's application, both in 2008 and 2015, there was no discretion there. The state, even if the Chief had wanted to issue a license, the state would not issue a license to Mr. Moran. And so it's our position that under Monal, the Chief had no discretion whatsoever, and there's no custom policy of the town or of an official policymaker of the town to hold the Chief liable as a matter of law for Mr. Moran's alleged injury. Simply put, the Chief is not the proximate cause of the injury. He was enforcing a nondiscretionary state law. While the Chief maintains that the statute is constitutional for the reasons set forth in our brief and set forth by the Commonwealth, there's no policy that was related to Mr. Moran's injury. And this applies, Your Honor, as we've briefed in our papers, to injunctive relief or prospective relief as well as to money damages. And that was the Supreme Court's holding in the L.A. County v. Humphreys case that I have provided. So it's our position that the Chief is entitled to judgment in his favor and that he shouldn't be held liable for attorney's fees or for any conduct related to Dr. Moran's license to carry because it was a nondiscretionary function of state law set forth by the legislature.